## Carson-Muse Lumber Co. v. Fairbanks, Morse and Company.

(Decided January 8, 1913.)

### Appeal from Whitley Circuit Court.

1. Contracts—Action Upon Contract for Sale of Engine—Failure to Comply With Promise to Deliver Engine—Pleading.—In an action by appellee to recover the contract price of an engine, sold and delivered appellant, and to recover in addition the freight charges, appellant by answer and counterclaim admitted its purchase of the engine and indebtedness therefor, as well as the freight charges, but alleged that the engine was purchased on March 2nd, 1911, with a definite understanding on the part of appellant that the engine should be delivered by appellee to appellant on board cars at Cincinnati, March 5th, 1911, for immediate transportation to appellant's place of business in Whitley County, this state; but that appellee did not comply with its promise to deliver, and did not in fact deliver the engine until March 20th; and that during the delay of fifteen days appellant could not carry on its business of manufacturing staves because of the absence of the engine, and by reason of deterioration in value of stave timber, loss to it of the value of use of the engine, and loss of certain profits which would have been made by use of the engine, and that it was damaged in the sum of $1096.50. The answer and counterclaim further pleaded that appellant was unable to carry on its business without the engine and was unable to procure another engine to take its place; that in response to its frequent requests of appellee to forward the engine it would promise to do so, but failed to comply with such promises until it had sustained a loss of fifteen days' time from its business. Held, Taking as true the averments of the answer, which should be done in passing upon the demurrer to it, it must be concluded that the time fixed for delivery of the engine was of the essence of the contract, and this being true, the delay of fifteen days in the delivery, unexplained by anything appearing in the record, constituted a breach of the contract on the part of appellee, which entitled appellant to recover such damages as may have directly resulted to it therefrom, and it, therefore, follows, that the lower court erred in sustaining the demurrer to the answer and counter-

claim and in rendering judgment for the price of the engine and freight charges, and dismissing the counterclaim.

2.   Contracts—Circumstances Under Which Made—Damages Contemplated by Parties.—It is apparent from the averments of the answer and counterclaim that the special circumstances under which the contract was made were communicated by appellant to appellee at the time of the purchase of the engine, and that any delay in its delivery would result in a loss of profits to appellant, and this being true, it may well be said that the damages complained of were such as the parties reasonably contemplated would result-from its breach.

TYE & SILER, for appellant.

SHARP, GATLIFF & SMITH, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Appellee sued appellant in the court below upon an account for $350.00, which amount was the contract price of a thirty-five horse power engine sold and delivered to the latter on board the cars at Cincinnati, Ohio, for use in its business of manufacturing staves; and for the further sum of $18.50 expended by appellee in paying the freight charges on the engine from Cincinnati, Ohio, to appellant's place of business in Whitley County, this State.

Appellant filed an answer and counterclaim wherein the purchase by it of the engine at the price named was admitted, and its indebtedness therefor, as well as for the further sum of $18.50 freight charges, acknowledged, but alleged that the engine was purchased of appellee on March 2nd, 1911, with a definite understanding on the part of appellant, and promise on the part of appellee, that it would be delivered by the latter on board the cars at Cincinnati, Ohio, March 5, 1911, for immediate transportation to appellee's place of business in Whitley County, this State; that appellee, however, failed to comply with its promise to deliver the engine on board of the cars March 5th, and did not, in fact, deliver it until March 20th, 1911; and that during this delay of fifteen days appellant was unable to carry on its business of manufacturing staves, because of the absence of the engine, and by reason thereof was damaged $1,096.50.

The damages claimed consisted, as alleged, of the deterioration in value of the stave timber, which appellant had on hand at its manufacturing plant, from its exposure to the weather during the fifteen days' delay

in the delivery of the engine; the loss to it of the value of the use of the engine in the manufacture of staves, during the same time, which was not less than $7.00 per day; also the loss to it of a profit of $7.00 per day, which it would have made during the fifteen days from the sale of staves made with the use of the engine.

The answer and counterclaim also contains the further averments that appellant was unable to carry on its business of manufacturing staves without the engine purchased by it of appellee; that it was unable to procure another engine to take its place; that in response to its frequent requests to appellee to forward the engine it would promise to do so, but failed to comply with such promises and did not, in fact, do so until appellant had sustained a loss of fifteen days time from its business.

Appellee filed a demurrer to the answer and counterclaim, which the Circuit Court sustained, and appellant refusing to plead further, judgment was entered in appellee's favor for the price of the engine and freight charges and dismissing the counterclaim. From that judgment this appeal is prosecuted.

We infer from statements contained in the briefs of counsel that the demurrer to the answer and counterclaim was sustained upon the ground that the acceptance of the engine by the appellant, after the time fixed by the contract between the parties for its delivery, constituted a waiver of its right to claim or recover damages because of the delay in its delivery. In view of the averments of the answer and counterclaim we cannot concur in this conclusion. Taking as true the averments of the answer, which should be done in passing upon the demurrer, we must conclude that the time fixed for the delivery of the engine by appellee at the time of its sale to appellant, was of the essence of the contract and, this being true, the delay of fifteen days in its delivery, unexplained by anything appearing in the record, constituted a breach of the contract on the part of the appellee, which entitled appellant to recover such damages as may have directly resulted to it therefrom. The rule applicable to the state of case here presented is well stated in the opinion in Fairbanks, Morse & Co., v. Hooper, 147 Ky., 154, wherein quoting from Hadley v. Baxendale, 9 Exchequer Reports, 341, it is said:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract

should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally and in the great multitude of cases not affected by any special circumstances from such a breach of contract. For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case; and of this advantage it would be very unjust to deprive them."

In American Bridge Company of New York v. Glenmore Distillery Co., 32 R., 873, we held that where it was shown by the evidence, and from the nature of the contract, that a loss of profits in the operation of a distillery was in the contemplation of the parties in fixing the time for the completion of a tower necessary for the operation of the distillery, such profits might be recovered by the distillery company, by reason of the delay of the contractor to complete the work within the time agreed on in the contract. The opinion quotes with approval the rule announced in Hadley v. Baxendale, supra, and declares it has never been successfully questioned. It will also be found that the rule has been enforced in the following cases: Bates Mch. Co. v. Norton Iron Works, 113 Ky., 372; Blue Grass Cord Co. v. Luthy & Co., 98 Ky., 583; Newmarket Co. v. Embry & Co., 20 R., 1130; Denhard v. Hurst & Rogers, 23 R., 790; Tradewater Coal Co. v. Lee, 24 R., 215; Owensboro-Harrison Tel. Co. v. Wisdom, 23 R., 97; Sedgwick on Damages, sections 144 to 153, inclusive; Ill. Cent. R. R. Co. v. Nelson, 139 Ky., 449.

It is apparent from the averments of the answer

and counterclaim that the special circumstances under which the contract was made, were communicated by appellant to appellee at the time of its purchase of the engine; that is, that appellant would be unable to operate its manufacturing plant until it received the engine; that its delivery on the car March 5th, 1911, for immediate transportation to appellant's manufactory was imperatively necessary, and that any considerable delay in the delivery of the engine would inevitably result in a loss of profits in the latter's business, and, in all probability, likewise result in a deterioration of the material on hand for use in manufacturing staves. Therefore, it may well be said that of the damages alleged, loss of profits to appellant's business and the deterioration in value of the material on hand, during the fifteen days' delay in delivering the engine, were such as the parties reasonably contemplated would result from its breach.

Cases may be found, a few of them in this jurisdiction, but the greater number in other jurisdictions, which hold that the acceptance by the purchaser of goods or machinery after the time fixed by the contract for its delivery, constitutes a waiver of any cause of action for damages the purchaser might have maintained for the seller's breach of the contract, had he refused to receive the property and sued for breach of contract, but examination of these cases will show that the circumstances attending the delivery of the article sold were such as to establish the waiver. In the case under consideration, however, the circumstances are wholly different, for the facts alleged in the answer and counterclaim charge that appellee sold the engine for specific and immediate use; that delivery thereof was to be made within three days of the date of the sale, and that the failure to deliver the engine at the time indicated would obstruct appellant's business and cause it loss and damage.

If the above facts alleged in the answer and counterclaim are made to appear in evidence they will entitle appellant to some part of the damages claimed by it. So in the case here presented by the pleadings appellant by accepting the engine after the delay in its delivery, did not waive the right to assert by counterclaim its claim to the damages resulting from its delayed delivery. It therefore follows that the Circuit Court erred in sustaining the demurrer to the answer and counterclaim, and also in rendering the judgment complained of.

For the reasons indicated the judgment is reversed

and cause remanded with directions to the Circuit Court to overrule the demurrer and for further proceedings consistent with the opinion.