### CAFFEY v. ALABAMA MACHINERY & SUPPLY CO. (3 Div. 431.)

(Court of Appeals of Alabama. Nov. 21, 1922. Rehearing Denied April 3, 1923.)

**1. Contracts ⬥⟳245(2)—Prior negotiations resulting in contract merged into written instrument.**

Prior negotiations resulting in a contract, which is reduced to writing, are all merged into the written instrument.

**2. Contracts ⬥⟳93(2)—Effect of signing contract without reading it stated.**

When one having capacity to read signs a contract without reading it, and without requesting it to be read to him, and no device is used to put him off his guard, he is bound by its terms.

**3. Sales ⬥⟳391(5)—Buyer, entitled to rescind, if acting promptly, may recover back part of purchase price paid.**

Where buyer may, on acting promptly, rescind a contract, he may recover back whatever part of the purchase price ·he may have paid.

**4. Sales ⬥⟳200(3)—Contract for tractor held executory, till tested by buyer on his plantation.**

Where, at the time of purchase of a tractor to be used in the manufacture of syrup from sorghum cane, it was within the contemplation of the parties that it should be delivered to the railroad to be transported to buyer's farm before it could be tested as to sufficiency to comply with the stipulated warranty, the contract as between the parties was conditional and executory until the tractor reached its destination and received the necessary test.

**5. Sales ⬥⟳398 — Buyer's damages on rescission of executory contract for tractor stated.**

Where a tractor was sold on warranty of its fitness for use in the manufacture of syrup from sorghum cane, and the contract of sale was executory until the tractor was tested on buyer's plantation, on buyer's rescission on

account of breach of warranty, his recoverable damages were the sum paid on the purchase price, with interest and amounts necessarily and reasonably expended by him in transporting and testing the tractor, up to and including a reasonable time for such test.

**6. Sales ⊝⟶398 — Damages from drying of sorghum not recoverable on count based on rescission of contract for delay in delivery of tractor.**

In buyer's action, based on a rescission of a contract for the purchase of a tractor, warranted by seller as fit for the contemplated purpose, on rescission by buyer, the costs of installing other machinery to take its place, and of operating such other machinery to take its place, and loss sustained on account of drying out of plaintiff's sorghum by reason of delay and inefficiency of the tractor, not being a part of the purchase money, were not recoverable under counts based on the rescission.

**7. Sales ⊝⟶179(3)—Claim for delay in delivery of tractor f. o. b. cars held waived.**

Under a contract whereby a tractor was sold to do designated work in the manufacture of syrup from sorghum cane, any claim which buyer had to a rescission, either for breach of warranty or misrepresentation based on delay in delivery of the tractor f. o. b. cars, *held* waived, when buyer, with knowledge of the time of delivery, unloaded it from the cars and transported it to his farm.

**8. Fraud ⊝⟶11(1)—Misrepresentations constituting legal fraud.**

Code 1907, § 4298, providing that misrepresentation of a material fact, made willfully to deceive or recklessly without knowledge and acted on, or if made by mistake and innocently and acted on, constitute a legal fraud, carries into effect the doctrine that parties, acting in good faith and for the purpose of inducing a contract, must not assert as a fact a material representation without knowing it to be true, and while in a sale of personalty great latitude is recognized in statements made under what is termed "dealer's talk," correctness in statements of facts is demanded, a violation of which, if injury results, gives the injured party a right of action.

**9. Fraud ⊝⟶11(1)—Seller's statements as to fitness of tractor for purpose intended held to be more than expression of opinion.**

Allegations that seller's agents, to induce plaintiff to enter into a contract for the purchase of a tractor to be used in manufacturing syrup from sorghum cane, represented that it was in good working condition, and that it was in such condition that, as soon as it was connected with the cane mill and steam cooking vat, it would be ready to operate the same satisfactorily, and that it would furnish sufficient steam for that purpose, which representations buyer relied on, *held* to be more than expression of an opinion or dealer's talk, and to be unequivocal statement of a material fact.

**10. Fraud ⊝⟶61—Punitive damages held not recoverable.**

In action for seller's misrepresentations as to fitness of a tractor to be used in the manufacture of syrup from sorghum cane, unless seller's fraud was malicious, oppressive, or gross, and the representations made with a knowledge of the falseness, or so recklessly made as to amount to the same thing, or with the purpose of injuring the buyer, there could be no recovery of punitive damages.

**11. Fraud ⊝⟶59(1)—Rule of damages stated.**

In action for damages and rescission of an executory contract for purchase of a tractor for a designated purpose, where fraud was alleged in seller's misrepresentation as to fitness of the machinery, the rule of damages recoverable would be such sum as would compensate buyer for the loss growing out of and being the proximate result of the fraud, and being within contemplation of the parties at the time the representations were made.

**12. Fraud ⊝⟶60—Elements of damages for seller's misrepresentation as to fitness of tractor stated.**

In buyer's action based on seller's misrepresentation as to fitness of a tractor for use in the manufacture of syrup from sorghum cane, buyer's damages *held* to be the cost of transportation on the railroad, expenses incident to transporting the tractor to his farm, its installation and testing, and the depreciation in his crop of sorghum from its drying out, if such was in the contemplation of the parties at the time of the contract.

**13. Fraud ⊝⟶60—Profits under contract not speculative.**

Where, at the time of the sale of a tractor to be used in the manufacture of syrup from sorghum cane, seller knew that buyer had an existing contract for the sale of sorghum at 80 cents per gallon, the profits under the latter contract were not speculative nor remote.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by William G. Caffey against the Alabama Machinery & Supply Company for damages, rescission of contract, etc. Judgment for plaintiff in an amount less' than prayed for, and he appeals. Reversed and remanded.

Certiorari denied, 209 Ala. 466, 96 South. 459.

Steiner, Crum & Weil, of Montgomery, for appellant.

A party who has been wronged should be awarded such damages as will make him whole. 8 R. C. L. 431; 75 Ind. App. 111, 127 N. E. 813; 76 Va. 372; 54 Pa. Super. Ct. 1; 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967; 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814; 3 Ga. App. 483, 60 S. E. 279. The right of action for fraud is independent of and collateral to the contract, and a suit for damages for the fraud is not a suit on the contract. 15 Mich. 265; 168 Cal. 507, 143 Pac. 729; 41 Ky. (2 B. Mon.) 375; 117 Me. 348, 104 Atl. 521, 2 A. L. R. 1390; (N. H.) 116

---

⊝⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Atl. 34. Plaintiff was entitled to recover for loss of his crop. 130 Fed. 17, 64 C. C. A. 385; 56 Tex. Civ. App. 324, 118 S. W. 218; 75 Ind. App. 111, 127 N. E. 813; 168 Cal. 507, 143 Pac. 729; 1 Bigelow on Fraud, 67.

Ball & Beckwith, of Montgomery, for appellee.

Distinction between actions for breach of warranty, breach of contract, and fraud or deceit must be observed. 17 Ala. App. 310; 24 R. C. L. 241, 334; 35 Cyc. 366; 78 Ala. 331; 132 Ala. 389, 31 South. 514. When rescission is for breach of warranty, the party cannot claim damages for breach of contract or fraud. 17 Ala. App. 310; 24 R. C. L. 235; 151 N. C. 393, 66 S. E. 451, 31 L. R. A. (N. S.) 910. The buyer cannot maintain action for breach of warranty until sale is completed and title passes. 35 Cyc. 441; 75 Hun, 428, 27 N. Y. Supp. 672; 24 R. I. 272, 52 Atl. 1082. In order to maintain an action for fraud, the buyer must not only rescind, but deliver or tender back the property. 205 Ala. 94, 87 South. 585. As to measure of damages for breach of warranty. 205 Ala. 568, 88 South. 748; 24 R. C. L. 253.

SAMFORD, J. There are 201 assignments of error in this record; many, and we may say, a large majority, of them might well have been omitted. The multiplication of assignments of error tend to mystify rather than to make clear, the real questions at issue.

The original suit grew out of a sale by the defendant to the plaintiff of certain machinery designed to be used by the plaintiff in the manufacture of syrup, from sorghum cane. The plaintiff was ignorant with regard to machinery and of its capacity to do the work desired by him. He applied to defendant to purchase this machinery, informing defendant of his ignorance and of his absolute reliance on defendant to furnish machinery of sufficient capacity and condition to perform the service required, at the same time informing defendant of the sorghum to be ground, the probable output, and the time of year, and its duration, in which the sorghum must be ground, to prevent deterioration and loss. The defendant, assuming and representing itself to have a knowledge of these things and of the character of the machinery desired, agreed with plaintiff to furnish such machine, and as a result of the negotiations entered into a written contract, the pertinent parts of which are as follows:

"An agreement made and entered into by and between Alabama Machinery & Supply Company, of Montgomery, Alabama, party of the first part, and Wm. G. Caffey, party of the second part, witnesseth, that the said Alabama Machinery & Supply Company agree to furnish the said Wm. G. Caffey the following articles, viz.: One 10″x12″ Hubar tractor, steam, in good running condition, to be delivered on cars at Ft. Davis, Ala., for the consideration of the payment of ($1,400.00) fourteen hundred dollars, as follows: ($500.00) Five hundred dollars down, the receipt whereof is hereby acknowledged, and the balance in installments, viz. $100 note due September 15th, and $100 every thirty days thereafter until balance paid in full. Notes bearing interest from date of bill of lading, at the rate of 8 per cent., to be given for all deferred payments.

"Alabama Machinery & Supply Company warrant the above described machinery to be of good material and workmanship and to perform in a satisfactory manner when properly used; and should any part of same prove to be defective, Alabama Machinery & Supply Company shall deliver at shipping point a perfect piece or part to replace said defective piece or part. It is understood that no warranty or verbal understanding of any kind exists in regard to the present contract other than what is herein expressly stated. It is understood and agreed that the title to above described property shall remain in the Alabama Machinery & Supply Company until fully paid for."

The tractor was delayed in delivery and when installed was found to be unsatisfactory, in bad physical condition, and of insufficient capacity to do the work designed and after defendant had tried, until long into the season for grinding the sorghum, to put the tractor in condition, it was finally abandoned, and on September 26th plaintiff rescinded the contract of purchase and demanded of defendant payment of the purchase money already paid and a cancellation of the deferred purchase-money notes. As a result of the purchase, and within the contemplation of the parties, the plaintiff expended sums of money for freight and transportation of the tractor to his farm, and for its installation and in efforts to make it do its work, and the delay caused plaintiff loss in the deterioration of his sorghum, by overripeness and drying out.

The foregoing sufficiently states the plaintiff's contentions, except as may hereinafter appear, and does not embrace the contention of the defendant, consisting of contrary evidence making questions of fact, and as to the weight of the one or the other we expressly refrain from expressing an opinion. Under the evidence adduced on the trial and the rulings of the court, the plaintiff was limited in his recovery to the amount of money paid under the counts for money had and received based upon a rescission of the contract and to punitive damages under certain counts claiming for fraud. The plaintiff having recovered the amount paid, with interest, counts 1, 2, and 6, may be eliminated from further consideration. Holloway v. Henderson Lbr. Co., 203 Ala. 246, 82 South. 344.

The first question of any moment that addresses itself to this court is: Can the plaintiff, by proper pleading and averment in the same count based upon a rescission of the

contract, claim and recover special damages for expenses incurred incident' to and growing out of the contract of sale, before rescission?

[1-3] It is elemental law that prior negotiations, resulting in a contract which is reduced to writing, are all merged into the written instrument; and it is equally well settled by our decisions that, when a party having capacity to read signs a contract without reading it and without requesting it to be read 'to him, and no device is used to put him off his guard, he is bound by its terms. 3 Michie's Dig. 310, par. 63. It is also well settled that in certain cases the buyer is entitled, upon acting promptly, to rescind the contract. Where this is the case, and rescission is made, the buyer may recover back whatever part of the purchase price he may have paid. 24 R. C. L. p. 65, par. 331.

[4] This would seem to be the general rule, when, however, it was within the contemplation of the parties at the time of the contract of sale, and the written contract does not preclude such construction, that the buyer should have the right of inspection or of testing the property bought, at the point to which it was to be transported or used, or, as in the case at bar, if at the time of entering into the contract of sale it was within the contemplation of the parties that the tractor should be delivered to the purchaser, f. o. b. the cars at a convenient railroad station (whether at Ft. Davis or Lobman is immaterial), to be transported thence to plaintiff's farm in Lowndes county, before it could be tested as to its sufficiency to comply with the warranty stipulated in the contract, the contract, as between the parties, would remain conditional and executory, until the tractor had reached its destination and received the necessary test. In the very nature of things it was impossible for plaintiff to have tested the tractor until it had been transported to his plantation and connected up with his syrup-making outfit, and until that time the contract was executory. Pierson et al. v. Crooks et al., 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831; Eaton v. Blackburn, 20 L. R. A. (N. S.) 53; Hauser & Haines Co. v. McKay, 53 Wash. 337, 101 Pac. 894, 27 L. R. A. (N. S.) 925.

[5, 6] It follows therefore that, the plaintiff being entitled to rescind on account of a breach of warranty, he should recover, not only the actual amount of money paid defendant on the purchase price, with interest, but such amounts necessarily and reasonably expended by him in transportation and testing the machine, up to and including a reasonable time for such tests, the same being in the nature of a part of the purchase price; it being clearly the intention of parties to the contract that the tractor should be tested at the place where plaintiff was to manufacture his syrup. Pierson & Co. v.

Crooks & Co., 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831; Chickering v. Bromberg, 52 Ala. 528; Harvey v. Kendall, 2 La. Ann. 748; Berkey v. Lefebure, 125 Iowa, 76, 99 N. W. 710; Kester Bros. v. Miller Bros., 119 N. C. 475, 26 S. E. 115; Phares v. Jaynes Lbr. Co., 118 Mo. App. 546, 94 S. W. 585. So that, in those counts of the complaint based upon a rescission of the contract of sale, upon proper pleading and proof, plaintiff may recover that part of the purchase money actually paid, and by way of special damages, the expense of transportation of the tractor from Lobman to Letohatchie, reasonable expenditure for labor, wood, and materials in moving the tractor from Letohatchie to plaintiff's plantation, and the reasonable expense of installing the tractor and testing same, to such time as the contract was rescinded; but the costs of installing other machinery to take the place of the tractor, and of operating such other machinery, and any loss sustained by and on account of the drying out of of plaintiff's sorghum by reason of delay and the inefficiency of the tractor cannot in any sense be said to be a part of the purchase money of the tractor, and, not being such, cannot be recovered in these counts.

[7] Another phase of the case at bar may be eliminated at this point. Any claims which the plaintiff might have had to a rescission either for breach of warranty or misrepresentation, based upon a delivery at Lobman, instead of Ft. Davis, or on account of delay in delivery of the tractor f. o. b. the cars, were waived by the plaintiff when, with knowledge of the time of delivery, he unloaded the tractor at Letohatchie and transported it to the farm. If he sought rescission for these reasons, he should have acted at an earlier date. Parties desiring to rescind a contract must act with promptness. 24 R. C. L. 291, par. 573.

[8] The third and only other proposition necessary for us to consider is the right of recovery based upon misrepresentations of material facts as an inducement to the entering into the contract resulting in proximate damage to plaintiff. Under Code 1907, § 4298:

"Misrepresentation of a material fact, made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitutes a legal fraud."

The foregoing, while enacted into statute law, is but a brief statement of the general law on the subject, carrying into effect the ancient doctrine that parties, in their dealings with one another, must act in good faith and, for the purpose of inducing a contract, must not assert as a fact a material representation without knowing it to be true, and while in the sale of personal property great latitude is recognized in statements made, under what is termed "dealer's talk,"

correctness in statements of facts affecting the transactions is always demanded, a violation of which, if injury result, gives to the injured party a right of action that compensation may be paid, in so far as may be, for the injury done.

[9] For purposes of illustration in what we have to say, we here quote the charges of fraud in two counts of the complaint. Count 7 charges:

"And the plaintiff further avers that in said negotations the agent or agents of the defendant, while acting within the line and scope of their employment by the defendant, for the purpose of inducing the plaintiff to enter into said contract for the purchase of said tractor, represented that said tractor was in good working condition; and the plaintiff avers that he relied on said representation and entered into said contract, that said representation was untrue, in that said tractor was not in good working condition, and that he was injured and damaged as a direct and proximate result of said misrepresentation, as is hereinafter more particularly set forth."

Count 9 charges:

"And the plaintiff further avers that in said negotations the agent or agents of the defendant, while acting within the line and scope of their employment by the defendant, for the purpose of inducing the plaintiff to enter into said contract for the purchase of said tractor, represented that said tractor was in such condition that, as soon as it was connected with the cane mill and steam cooking vat, it would be ready to operate the same satisfactorily, and that it would furnish sufficient steam for that purpose; and the plaintiff avers that he relied on said representation in entering into said contract, that said representation was untrue, and that he was injured and damaged as a direct and proximate result of said misrepresentation, as is hereinafter more particularly set forth."

The tractor having been contracted for for a specific purpose, of which defendant was fully advised, and the tractor not being accessible to plaintiff for examination and test at the time of contract, the statement in count 9 was more than the expression of an opinion or "dealer's talk," and the statement as alleged in count 7 was the unequivocal statement of a material fact, either of which being false, and being made for the purpose of inducing the contract, the defendant was answerable in damages for such injurious consequences as were a proximate cause of the misrepresentation and that, too, whether the representations were intentionally or mistakenly false.

"He who affirms what he does not know to be true, or knows to be false, to another's prejudice and his own gain, is, both in morality and law, guilty of falsehood, and must answer in damages." Munroe v. Pritchett, 16 Ala. 785, 50 Am. Dec. 203; Harton v. Belcher, 195 Ala. 186, 70 South. 141; Fay & Egan Co. v. Independent Lbr. Co., 178 Ala. 166, 59 South. 470.

19 ALA. APP.—13

In the latter case above cited the representations alleged to have been false are very similar to those alleged in the various fraud counts in the instant case.

[10, 11] The legal fraud being alleged and proven by the evidence to the satisfaction of the jury, what would be the measure of damage to which the plaintiff would be entitled? Unless the jury could conclude from the evidence that the fraud was malicious, oppressive, or gross, the representations being made with a knowledge of their falseness (or so recklessly made as to amount to the same thing), and with the purpose of injuring the plaintiff, there could be no recovery of punitive damages. In this case, so far as the record discloses, there is no element or evidence justifying a verdict for punitive damages. If the fraud was committed, and is proven according to the rules of law, the plaintiff is entitled to recover such damage as will compensate him for the loss growing out of and being the proximate result of the fraud, and being within the contemplation of the parties at the time the representations were made. Kilby Loco. Wks. v. Lacy & Sons, 12 Ala. App. 464, 67 South. 754; 2 R. C. L. p. 456, par. 202; Hogan v. Thorington, 8 Port. 428; Munroe v. Pritchett, supra.

[12] What were the plaintiff's damages proximately growing out of the deceit, and that could have been anticipated by both parties when the contract was entered into, as induced by the false representations? The costs of transportation on the railroad, the expenses incident to transporting the tractor to the plaintiff's farm, its installation and testing—all of these certainly. As to the damage growing out of the depreciation of plaintiff's crop of sorghum, the courts in this jurisdiction stand committed to the doctrine that such damage is not speculative, and in proper suits is recoverable. In Culver v. Hill, 68 Ala. 66, 44 Am. Rep. 134, the Supreme Court held that the loss of a crop of corn and cotton was recoverable.

In the case of Adams Machinery Co. v. Southern States Lumber Co., 2 Ala. App. 471, 479, 56 South. 826, 829, it was held that damage to logs by weather and insects was recoverable, where the seller had notice at the time of the sale that the sawmill outfit was wanted by the buyer to cut logs then in good condition, but that the logs were liable to be damaged by weather and worms if the outfit should not be promptly delivered. This court said in that case:

"There was evidence tending to show that at the time the original contract was entered into, * * * the purchaser made known to the seller that the sawmill contracted for was wanted at once, for the purpose of sawing a large number of logs which the purchaser then had in its yard at Brown's Ferry ready to be sawn into lumber; that the logs were then in good condition, but the seller was informed of the purchaser's fear that they would be damaged if they remained exposed to the winds and wea-

ther and insects during the summer months; that the stipulation for prompt shipment of the machinery was entered into with this situation in contemplation by both parties to the contract; and that there was considerable delay by the seller in complying with the provisions of the contract in reference to the time of shipping the machinery. * * * From the evidence above referred to, it is plain that this is a case of a contract entered into under special circumstances within the contemplation of both parties to it, so that the seller, if he was at fault in supplying the machinery at the time stipulated for, was liable for whatever damages the purchaser sustained which were the reasonable and natural consequences of a breach of the contract in that respect under the circumstances so known and with reference to which the parties acted. * * * That damages to the logs, caused by worms and continuous exposure to the weather, were, under the circumstances, to be regarded as within the contemplation of the parties, is a conclusion supported by well-considered rulings on quite analogous states of fact."

The court thereupon cites a number of authorities identical in principle with the case now before the court. If the buyer was entitled to recover damage to logs by weather and worms, there seems to be no good reason why this plaintiff should not recover for damage to his crop of sorghum, due to the defendant's fraud.

In Neal v. Pender-Heyman Hdwe. Co., 122 N. C. 104, 29 S. E. 96, 65 Am. St. Rep. 697, defendant contracted to ship plaintiff flues which plaintiff wanted for curing his tobacco. On July 15th, and again on July 27th, defendant wrote that he would ship the flues, but had not done so on August 5th, when plaintiff wrote him to return his money, so he could buy flues elsewhere. Defendant returned the money advanced, and plaintiff sued him for damage done his crop of tobacco by reason of the delay in cutting and curing, due to the defendant's failure to ship the flues, and to plaintiff's being compelled to use defective flues in curing his crop. It was held that plaintiff was entitled to recover for the depreciation in his tobacco. 24 A. & E. 1155.

Where the plaintiff had given notice of the use to which an engine bought of defendant was to be put, it was held that he could recover for deterioration of crops during the delay in delivery and for loss of profits. Carson Muse Lbr. Co. v. Fairbanks Morse & Co., 151 Ky. 404, 152 S. W. 256; Cushman Motor Works v. Kelley (Okl. Sup.) 173 Pac. 1042.

Profits can be recovered, when not purely speculative, and as the plaintiff in this case had an existing contract fixing the price of his syrup, of which the defendant had notice in advance, the plaintiff should be allowed to recover on this basis. Allis v. McLean, 48 Mich. 428, 12 N. W. 640; Brigham v. Carlisle, 78 Ala. 243, 249, 56 Am. Rep. 28.

Where guano was sold with knowledge that it was to be used in raising a crop of cotton, the profits that would have arisen from the crop, but for the breach of contract to furnish the guano, are recoverable. Bell v. Reynolds, 78 Ala. 511, 56 Am. Rep. 52; Reynolds v. Bell, 84 Ala. 496, 4 South. 703.

[13] The profit on a crop of cotton, based on the market value of the cotton, is far more uncertain than the profits on a crop of sorghum based on a fixed contract price of 80 cents per gallon, and it is definitely settled that, if the seller knows the buyer has an existing contract, the profits derivable under that contract are not speculative and remote, and are recoverable. Penn & Co. v. Smith, 104 Ala. 445, 449, 18 South. 38.

In addition to the foregoing, our courts have continued to hold that damage to crops are not speculative. Abercrombie v. V. C. C. Co., 206 Ala. 615, 91 South. 311. Was such damage within the contemplation of the parties at the time of the contract? If so, the damage would be recoverable, provided, of course, such damage resulted proximately from defendant's wrongful act.

We think the foregoing sufficiently disposes of the questions presented, without specific action upon each of the 201 assignments of error. The rulings of the trial court were not in accord with the foregoing, and for the errors pointed out the judgment is reversed, and the cause is remanded.

Reversed and remanded.